NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HOME SOURCE INDUSTRIES, LLC, | : : : | |
| Plaintiff, | : : | Civil Action No. 14-2001 (SRC) |
| v. | : : : | OPINION |
| FREIGHTQUOTE.COM, INC., | : : | |
| Defendant. | : : : : | |

**CHESLER**, District Judge

This matter comes before the Court upon the motion filed by Defendant Freighquote.com, Inc. ("Defendant" or "Freightquote") to transfer venue pursuant to 28 U.S.C. § 1404(a). Plaintiff Home Source Industries, LLC ("Plaintiff" or "Home Source") has opposed the motion. The Court has considered the papers filed by the parties and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons discussed below, the Court will deny Defendant's motion.

I.   **BACKGROUND**

This action arises out of the alleged failure by Defendant to make a timely delivery of goods shipped by Plaintiff for a trade show in Las Vegas, Nevada. In or about August 2012, Plaintiff, a wholesale distributor of home goods, enrolled as a customer of Freightquote, a company engaged in the business of brokering shipping services for its clients using motor

1

carriers with which Freightquote contracts.  The shipment order at issue was placed by Home Source employee Rupinder Singh on March 6, 2014.  He emailed Freightquote to request a quote for shipping furniture to a trade show booth in Las Vegas, expressing the requirement that the goods be delivered by March 13, 2014.  In a series of emails traded between Freightquote and Singh, Freightquote provided a price, Singh responded by directing the pick-up to be scheduled and Freightquote acknowledged receipt of the order as well as assured Singh that delivery would be made by the March 13 deadline. Freightquote sent a confirming email, which included details of the order placed, a hyperlink to the "Terms and Conditions" of the transaction and a link to the corresponding bill of lading for Home Source to print out and hand to the carrier when the shipment was picked up.  The shipment at issue was picked up from Home Source's East Rutherford, New Jersey warehouse on March 7, 2014.  However, according to the Complaint, Freightquote informed Home Source on March 13, 2014 that the shipment would not arrive at the trade show by the required delivery date of March 13, 2014.

Home Source filed this action on March 31, 2014, asserting claims for breach of contract, violation of the implied duty of good faith and negligent misrepresentation.  The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

## II. DISCUSSION

Freightquote moves to transfer this action to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a).  That provision states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  To transfer an action under § 1404(a), venue must be proper

2

both in the transferor court and the transferee court. Osteotech, Inc. v. GenSci Regeneration Scis., Inc., 6 F. Supp. 2d 349, 357 (D.N.J.1998). The party seeking to transfer must show that the alternative venue is not only adequate, but also more convenient than the current one. Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir.1995); Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 480 (D.N.J.1993). The Third Circuit has held that "[s]ection 1404(a) transfers are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." Lafferty v. St. Riel, 495 F.3d 72, 76–77 (3d Cir. 2007).

Freightquote's motion to transfer venue properly falls within the purview of § 1404(a), as both the District of New Jersey and the proposed transferee district would serve as proper venues for this action. The statute governing venue, 28 U.S.C. § 1391, provides that a civil action may be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). The only Defendant named in this lawsuit, Freightquote, is headquartered in Kansas City, Missouri, making the federal district courts of the State of Missouri an appropriate venue for this action. The statute also provides that a civil action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). In this case, a substantial part of the events giving rise to this suit occurred in the District of New Jersey. Home Source entered into an agreement from its New Jersey place of business for the shipment of its goods from its New Jersey warehouse, and as part of the alleged breach of that agreement, Freightquote in fact arranged for the goods to be picked up from the New Jersey warehouse.

To determine whether, in its discretion, the Court should order a transfer of the action pursuant to § 1404(a), it must balance various private and public interests. Jumara, 55 F.3d at

3

879.  In <u>Jumara</u>, the Third Circuit provided a list of factors a district court should consider.  The private interest factors are: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses (only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (only to the extent that the files could not be produced in the alternative forum).  <u>Id.</u>  The public interest factors are: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  <u>Id.</u> at 879-80.

Freightquote's motion relies heavily on a forum selection clause set forth in the Terms and Conditions.  Section 5 of the Terms and Conditions, titled "Forum Selection and Choice of Law," provides as follows:

> Any claim, dispute or litigation relating to these TERMS AND CONDITIONS, any shipment scheduled or tendered hereunder or through the Company's website, or relating to any and all disputes between the Company and the enrolled Customer, Shipper and/or Consignee, shall be filed in the Circuit Court of Jackson County, Missouri or in the United States District Court for the Western District of Missouri, Western Division and shall be subject to Missouri law.  Customer hereby irrevocably consents and submits themselves to the personal jurisdiction of said courts for all such purposes.

(Brown Aff. Ex. 4.)  The Terms and Conditions further provide that

> the enrolled Customer, Shipper and/or Consignee (hereinafter collectively referred to as "Customer") agrees to these TERMS AND CONDITIONS which no agent or employee of the parties may alter.  These TERMS AND

4

>      CONDITIONS shall apply to all shipments scheduled by Customer, unless
>      and until these TERMS AND CONDITIONS are altered or amended by
>      the Company.

(Id.)

Freightquote argues that, prior to placing the subject order, Plaintiff was on notice of, and had access to, Defendant's "Terms and Conditions," and therefore agreed to those terms by virtue of placing the subject order. It notes that not only was a hyperlink to the Terms and Conditions containing the forum selection clause included in the March 6, 2014 email confirming Home Source's order relating to the subject transaction, but also included in each of the confirming emails relating to the previous ten times shipment orders had been placed by Home Source. Moreover, Freightquote points out, the Terms and Conditions, containing the quoted forum selection clause, were also accessible via a hyperlink included in the August 9, 2012 email which confirmed activation of Home Source's account with Freightquote.

Home Source, in response, argues that the forum selection clause is not binding and does not govern the subject transaction because Home Source never agreed to such a term. It asserts that, while the a link to "Terms and Conditions" was included in various emails, including the enrollment email, the emails did not direct Home Source to click on a link to assent to the terms as part of the bargain of doing business with Freightquote or otherwise express its assent to those terms in some other fashion. It further asserts that "at no point in time did anyone at Home Source ever click on – let alone agree to, a 'Terms and Conditions' link found in any website owned by the defendant." (Evar Decl., ¶ 2.) Moreover, Plaintiff argues, it is not even clear whether the Terms and Conditions on which Defendant relies would have even been accessible to Plaintiff through those links, had Plaintiff in fact attempted to access the information. It is undisputed that each bill of lading corresponding to the various shipment orders placed with

5

Freightquote, including the subject order, stated that "Customer agrees to the organization's terms and conditions, which can be found at www.freightpaymentcent.com," but it is also undisputed that that particular website had been devoid of content since July 2013, months before Home Source placed its first order with Freightquote.  Home Source maintains that Defendant has failed to demonstrate that this transaction is governed by a binding forum selection clause because (1) the Terms and Conditions in which the clause is set forth were not mutually agreed to but rather unilaterally presented as a link in an email sent after an order was actually placed, i.e., after a shipment agreement was entered into between Home Source and Freightquote and (2) there is no indication that the link would have taken Home Source to a site containing the relevant clause.

As a threshold matter in the Court's venue analysis according to the relevant private and public interest factors, the Court must resolve the issue of whether Defendant, as the party seeking to transfer this action, has demonstrated that the forum selection clause is a valid part of the agreement pertaining to the shipment at issue.  In a federal case grounded in diversity jurisdiction, such as the case at bar, it is federal law – and particularly § 1404(a) – which governs the district court's enforcement of the forum selection clause in deciding whether to transfer venue.  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 32 (1988).  The Supreme Court has held that in determining whether transfer of venue is proper, "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which represents the parties' agreement as to the most proper forum."  Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas, 134 S. Ct. 568, 581 (2013) (citing Stewart, 487 U.S. at 31).  The Supreme Court reasoned that when the parties have agreed to a valid forum selection clause:

>a district court may consider arguments about public-interest factors only.  Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases.  Although it is conceivable in a particular case that the district court would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, such cases will not be common.

Id. at 582 (internal citation and quotation marks omitted).

The Court concludes that Defendant has indeed demonstrated that the forum selection clause applies to the transaction at issue.  The Court so finds based on the enrollment email sent to Home Source on August 9, 2012, confirming that Home Source had opened an account for purchasing shipment services offered by Freightquote.  That document directs the recipient to "view our terms & conditions," with "terms & conditions" underlined in the email to signal that it is a hyperlink to additional pages.  Though the terms of doing business are not set forth in the email itself, the additional content is clearly identified in the email, such that the recipient cannot claim surprise or hardship in ascertaining the terms.  The terms and conditions are thus incorporated by reference into the agreement between the parties for the purchase and sale of shipment services.  Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003).

Plaintiff protests that this clause is not enforceable because no agreement containing the clause was executed.  It argues that the enrollment email did not prompt Home Source to "click through" the terms and conditions link, nor did Home Source ever affirmatively express its acceptance of those terms.  In Home Source's words, it "was never required to agree to such terms" and "there is no signed agreement and no 'click through' agreement regarding the deliveries."  (Sur-Reply at 5-6.) This argument is belied by the content of the terms and conditions and Home Source's conduct, that is, its decision to do business with Freightquote following receipt of the enrollment email.  As quoted above, the "terms and conditions"

7

document expressly provides that those terms, which include the forum selection clause on which Defendant relies, "shall apply to all shipments scheduled by Customer," in this case, shipments scheduled by Home Source. Home Source's assent to the forum selection clause is evidenced by its order of shipment services. The forum selection clause applies, therefore, to each purchase and sale transaction entered into between Freightquote and Home Source pursuant to the account opened by Home Source, including, the shipment transaction that is the subject of this lawsuit.

Having entered into an agreement with Freightquote for the shipment at issue, the burden falls on Home Source to demonstrate that the forum selection clause contained in that agreement is invalid. It is well established that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); see also Coastal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F.2d 190, 203 (3d Cir. 1983), cert. denied, 464 U.S. 938 (1983), overruled on other grounds by Lauro Lines S.R.L. v. Chasser, 490 U.S. 495 (1989) (holding same). Forum selection clauses are routinely upheld, even in situations involving adhesion contracts, unequal bargaining power, and the absence of negotiations over the clause. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 594–95 (1991) (holding that forum selection clause on back of cruise ticket was enforceable despite lack of bargaining over the terms of the clause). To defeat enforcement, the objecting party must make a strong showing "(1) that it [the forum selection clause] is the result of fraud or overreaching, (2) that enforcement would violate a strong public policy of the forum, or (3) that enforcement would in the particular circumstances of the case result in litigation in a jurisdiction so seriously

inconvenient as to be unreasonable." Coastal Steel Corp., 709 F.2d at 203.  Plaintiff raises none of these grounds for challenging the validity of the forum selection clause.

Instead, Plaintiff argues that the forum selection clause should not be enforced because no one at Home Source clicked on the enrollment email's hyperlink to access the pages containing the terms and conditions nor was Home Source required to read them.  This argument is unavailing.  It is the equivalent of arguing that the terms of purchasing services from Freightquote should not apply to Home Source, or more particularly, to the shipment scheduled by Home Source on March 6, 2014 – i.e., the subject of this litigation – because Home Source failed to read through the entire document.  A failure to read the terms and conditions, and specifically, the forum selection clause, does not render the forum selection clause invalid or diminish its force and effect as to each shipment scheduled by Home Source.  Standard Bent Glass, 584 F.3d at 447-48; see also Park Inn Int'l, LLC v. Mody Enters., Inc., 105 F. Supp. 2d 370, 374-75 (D.N.J. 2000) (holding that a party's failure to read a contract it has entered into or ignorance of its obligation will not excuse performance or invalidate a forum selection clause). Indeed, it is hornbook law that failure "to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading." Toll Bros., Inc. v. Fields, 2011 WL 463090, at *3 (D.N.J. Feb. 4, 2011) (quoting Young v. Prudential Ins. Co. of Am., 297 N.J. Super. 605, 619 (App. Div. 1997).  The commercial relationship between Plaintiff and Defendant was established through electronic documents, rather than the traditional paper format, but this does not excuse Home Source from its obligation to read the clearly identified terms and conditions.  Moreover, there is no indication that it was prevented from doing so by any fraud or misconduct on the part of Freightquote.  See, e.g., Park Inn Int'l, 105 F. Supp. 2d at 374 ("Failure to explain the terms of an agreement does not constitute fraud, overreaching or

unconscionability so as to void a forum selection clause.") In this regard, Home Source has argued that it should not be bound by the forum selection clause because clicking on the terms and conditions hyperlink may have accessed a web page with no content, in light of Freightquote's undisputed failure to maintain an operational website beginning in July 2013. This assertion implies that Freightquote did not actually make the terms and conditions available, or otherwise prevented Home Source from reading them, but it amounts to speculation. The record does not even suggest that the website or any links were disabled in August 2012 when Home Source signed up as a Freightquote customer and received the enrollment email.

Pursuant to Atlantic Marine, the valid forum selection clause operates as a waiver of Plaintiff's right to challenge the federal or state courts of Missouri as an inconvenient venue. Atl. Marine Const. Co., 134 S. Ct. at 582. This Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." Id. In light of the valid forum selection clause applicable to this breach of contract action, the Court must conclude that the parties' private interests support transfer of this action to the Western District of Missouri.

This balance is maintained by the public interest factors bearing on the question of the more convenient venue to litigate this action. An analysis of those public factors, as set forth by the Third Circuit's opinion in Jumara, demonstrates that they are overall neutral between the competing fora of the District of New Jersey and the Western District of Missouri. The sixth public interest factor, the familiarity of the trial judge with applicable law, if anything provides additional support for transfer of this action. Assuming that the choice of law clause in the Terms and Conditions is enforced, Plaintiff's claims will be governed by the law of the State of Missouri. Presumably, a federal district court judge sitting in the Western District of Missouri would have greater familiarity with that state's law than a judge sitting in New Jersey.

In sum, based on the forum selection clause and the public Jumara factors, this Court concludes, in its discretion, that a transfer of this action to the Western District of Missouri would promote the convenience of the parties and serve the interests of justice. Freightquote has demonstrated that a transfer pursuant to 28 U.S.C. § 1404(a) is warranted.

### III.  CONCLUSION

For the foregoing reasons, the Court will grant Freightquote's motion to transfer venue. This action will be transferred, pursuant to § 1404(a), to the United States District Court for the Western District of Missouri. An appropriate Order with be filed together with this Opinion.

                                                s/Stanley R. Chesler
                                               STANLEY R. CHESLER
                                               United States District Judge

Dated:  November 19, 2014